[Civ. No. 17053. First Dist., Div. One. Jan. 9, 1957.]

ROSE NATHANSON, as Administratrix, etc., Appellant, v. MAY MURPHY et al., Respondents.

Morgan V. Spicer and H. R. Whiting for Appellant.

William Klein and Toland McGettigan for Respondents.

PETERS, P. J.—On March 3, 1953, the trial court granted plaintiff a judgment for $5,000 against defendants in a fraud action, together with interest at 7 per cent from June 11, 1947, the date the court found plaintiff had parted with the

money as a result of the alleged fraud. On September 30, 1955, the trial court entered its order granting defendants' motion to modify *nunc pro tunc* as of March 27, 1953, the findings of fact, conclusions and judgment in that action by providing that interest should run only from March 3, 1953, the date of the judgment. Plaintiff appeals.

The basic facts are not substantially in dispute and can be summarized as follows:

*June 11, 1947:* Plaintiff paid over to defendants $5,000 as a result of what the court found to be false representations by defendants. Plaintiff, thereafter, filed an action against defendants for fraud and deceit.

*March 3, 1953:* The trial court filed its judgment granting plaintiff the sum of $5,000 with interest at 7 per cent from June 11, 1947.

*March 27, 1953:* Defendants' motion for a new trial, that had been argued and submitted the preceding day, was denied. One of the basic disputes involved on this appeal is whether, at the time of arguing the motion for a new trial, the judge expressed an intent to modify the judgment so as to allow interest only from March 3, 1953.

*March 31, 1953:* An order modifying the findings, conclusions and judgment by eliminating interest prior to March 3, 1953, was filed. No explanation for the making of these modifying orders was given by the trial judge.

Defendants appealed from the judgment, while the plaintiff appealed from the modifying order of March 31, 1953.

*April 19, 1955:* This court affirmed the judgment and reversed the modifying order of March 31, 1953. (*Nathanson v. Murphy,* 132 Cal.App.2d 363 [282 P.2d 174].) In due course, after denial of a petition for hearing, the remittitur issued.

*August 5, 1955:* The defendant served a notice of motion for an order directing that the order of March 31, 1953, modifying the findings, conclusions and judgment in reference to interest be entered *nunc pro tunc* as of March 27, 1953.

*September 30, 1955:* A minute order was entered directing "that motion of defendants to enter orders nunc pro tunc and amended judgment as specified in notice of motion be granted."

On the present appeal, the first contention of appellant is that the trial court had no jurisdiction to enter the challenged order, because the order appealed from is the "same" as the order previously reversed. The contention is that "the orders

after reversal had no further existence and could not thereafter be entered nunc pro tunc.'' (App.Op.Br. p. 7; citing such cases as *Cowdery* v. *London etc. Bank,* 139 Cal. 298 [73 P. 196, 96 Am.St.Rep. 115]; *Wickersham* v. *Crittenden,* 103 Cal. 582 [37 P. 513]; *Mulford* v. *Estudillo,* 32 Cal. 131, and *Gillespie* v. *Andrews,* 78 Cal.App. 595 [248 P. 715].)

Those cases stand for the proposition that once an order is finally reversed, that order cannot thereafter be modified. That is not this case. While the order of September 30, 1955, happens to be similar to the order of March 31, 1953, the September, 1955, order was not the ''same'' order as that of March, 1953. It was a new order, made for new reasons and upon new grounds.

Appellant also argues, for much the same reasons, that the September, 1955, order was invalidly entered *nunc pro tunc* because it is the law of the case that the order of March 31, 1953, was not entered to correct a clerical error, and so the order of September, 1955, since it is the ''same'' order, cannot be so entered. This argument is unsound for the same reasons that the first argument is unsound. The September, 1955, order is new and different from that of March, 1953.

It might be well to point out just what was decided in the prior appeal in reference to the March, 1953, order. In *Nathanson* v. *Murphy,* 132 Cal.App.2d 363, at page 373 [282 P.2d 174], it.is stated: ''The orders were not made pursuant to the provisions of section 473, Code of Civil Procedure; to correct clerical errors or misprision in the record; or on motion for new trial pursuant to the provisions of section 663 or 663a, Code of Civil Procedure. Section 3288, Civil Code, provides that in an action for the breach of an obligation not arising from contract and in every case of oppression, fraud or malice, interest may be given in the discretion of the *jury.* There being no jury in this case, this means the trial court, to whom discretion is left the determination of whether interest will be awarded. . . . The court exercised its discretion and awarded interest. '. . . the rule is well settled that a judgment or order once regularly entered can be modified or vacated by the court which entered it only in the manner prescribed by statute. . . .' ''

The doctrine of the law of the case is that where on appeal the court, ''in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be

adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal." (*Tally* v. *Ganahl*, 151 Cal. 418, 421 [90 P. 1049].) ▉ In our former opinion, so far as the point here involved is concerned, we did not state "a principle or rule of law" within the meaning of the rule under discussion. We simply held, and so stated, that there was nothing in the record to justify the court in modifying the judgment on March 31, 1953, four days after denying the motion for a new trial. This was the fact, and this was the theory upon which the case was argued and decided. But now we are presented not with the order of March 31, 1953, for which no basis appears, but with the order of September 30, 1955, for which the court gave a reason, namely, to correct a clerical error made on March 27, 1953, at the time when the new trial was denied. Thus, the doctrine of law of the case has no application.

Appellant's counsel next urges that his client was entitled to interest as a matter of right from the date his client parted with her money under section 3287 of the Civil Code. In our former opinion we held that, when sections 3287 and 3288 of the Civil Code are read together, whether interest should be allowed from the date of the deceit or from the date of judgment was a matter to be determined by the trial court in its discretion. The argument, made on the previous appeal, that appellant was entitled to interest from the date of the fraud as a matter of right was rejected. This is so because we reversed the orders of March 31, 1953, not because the court was bound to allow interest from the date of the fraud, but because the orders modifying the interest charge were entered without authority.

▉ This ruling on the prior appeal that in a fraud case the trial court possesses discretion as to whether or not interest shall be allowed from the date of the fraud or only from the date of judgment was clearly correct. The two pertinent Civil Code sections read as follows:

Section 3287: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

Section 3288: "In an action for the breach of an obligation not arising from contract, and in every case of oppression,

fraud, or malice, interest may be given, in the discretion of the jury."

Although section 3287 seems to provide that in every case involving "certain" damages interest should be allowed, when that section is read with section 3288 it is clear that in cases "not arising from contract" discretion as to interest is conferred on the trial court. The contrary implication found in *Goodspeed* v. *Great Western Power Co.*, 33 Cal. App.2d 245, 271 [91 P.2d 623, 92 P.2d 410], is based upon the fact that the court in that case considered only section 3287 and failed to consider section 3288. When these sections are read together the proper rule is that the defrauded party may ask for damages from the date of the fraud, but "[w]hether such interest is to be awarded is left to the discretion of the trier of fact to be exercised in consideration of the circumstances of the case." (*Pavlovich* v. *Neidhardt*, 128 Cal.App.2d 559, 562* [275 P.2d 836]; see also *Anderson* v. *Anderson*, 129 Cal.App.2d 403 [276 P.2d 862]; *Leonard* v. *Huston*, 122 Cal.App.2d 541 [265 P.2d 566]; *McCowen* v. *Pew*, 18 Cal.App. 482 [123 P. 354].)

We now come to the basic question involved on this appeal —was the trial court justified in making *nunc pro tunc* the modifying order of September 30, 1955?

■ A court has the inherent power to correct a clerical error after entry of judgment, and there is no time limitation in the exercise of this power. (*Estate of Goldberg*, 10 Cal.2d 709 [76 P.2d 508].) This is not disputed. The question is, was an error committed when the trial court denied the motion for a new trial, and was that error "clerical" or "judicial"? What does the record show in this regard?

The affidavit of respondents' counsel avers that at the argument on the motion for a new trial on March 26, 1953, the attention of the trial judge was called to the fact that the judgment allowed interest from June 11, 1947, the date of the fraud, and that the trial judge, in open court, declared "that it had not been his intention at any time to allow interest from the date the transaction involved took place . . . but intended that interest be allowed from the date of judgment, and directed and ordered that the findings and conclusions of law be modified and the judgment amended accordingly; that said order directing such modification and

---

*In that case interest was not allowed from the date of the fraud and this was approved by the appellate court.

amendment was inadvertently omitted from the minutes of court on said day.''

Counsel for appellant filed an affidavit averring that the question of interest was not mentioned at the argument on March 26, 1953, and was first mentioned when the court made the abortive orders of March 31, 1953. This conflict was, of course, for the trial court.

The trial judge had no doubts that he had intended to modify the original judgment by deleting the provision for interest, but was somewhat uncertain as to whether he had expressed that feeling at the hearing on March 26, 1953, or first expressed it at the hearing on March 31, 1953. However, he did state in reference to the March 26, 1953, hearing: ''I do recall this, that I had in my mind to allow interest only from the date of judgment.''

The court reporter who was present at the hearing of the motion for a new trial on March 26, 1953, but did not take down the proceedings, testified that it was his best recollection that at the hearing of March 26, 1953, the trial judge expressed the thought ''that the fraud was not of such a nature that would justify . . . [him] in dating the interest back to the time of the transaction. Therefore you would . . . correct the finding so that it would read interest from the date of the judgment''; that he was not positive about it and such statement may have been made on March 31, 1953, but his memory was ''that on the proceedings on the motion for a new trial you made that statement.'' After reviewing the matter in his mind the reporter testified that ''I believe you said it on the motion for new trial.'' The trial judge then stated that because the case was not a clear-cut one of fraud, he ''never had in mind allowing interest from the date of the transaction because I thought that would be a penalty that ought to be assessed only with a definite case of fraud.'' After counsel for appellant stated that he believed the trial judge first expressed such thoughts at the hearing on March 31, 1953, the trial judge stated: ''My recollection is uncertain, but I don't know just how to put it; I believe . . . it was on the motion for a new trial.''

It is apparent from this testimony that the implied finding of the trial court that on March 26, 1953, at the hearing of the motion for a new trial, the trial judge not only had the intent to change the allowance of interest but expressed such intent, is supported by ample evidence. The failure to make such change was therefore a ''clerical'' mis-

take, and one that the court had the power to rectify, *nunc pro tunc.*

In 3 Witkin on California Procedure, page 1894, the test between a clerical and judicial mistake is defined as follows: "The test is simply whether the challenged judgment was made or entered inadvertently (clerical error) or advertently (judicial error)." In *Morgan* v. *State Board of Equalization,* 89 Cal.App.2d 674, 682 [201 P.2d 859], this court stated: "From these cases, it appears that the rules to be followed in determining whether an error is clerical or judicial so that the court may have the power to correct it by amendment, are as follows: (1) No serious problem is involved where the correction is to include a matter inadvertently omitted, such as the grounds for granting a new trial, or where the error is plainly clerical. (2) The serious problem arises where the amendment is substantially different from the original order or substantially changes the rights of the parties. In such cases, if the court is purporting to correct a clerical error, it should say so, or there should be something in the record to show it. (3) Where there is conflicting evidence as to whether the error was clerical, the reviewing court will probably accept the conclusion of the trial court. [Citing *Bastajian* v. *Brown,* 19 Cal.2d 209 (120 P.2d 9).] If the record shows clearly that there was no clerical error, the recital by the trial court will not be conclusive."

The Bastajian case, cited above, illustrates how broad the powers of the trial judge are in correcting clerical errors. In that case the trial judge ordered judgment for the defendants, but, because of the illness of defendants' attorney, no findings were submitted. About a year later plaintiff's counsel prepared findings supporting the judgment but making favorable mention of the losing party. Defendants' counsel objected by letter to the findings, but they were nevertheless signed. Later they were corrected *"nunc pro tunc."* It was held on appeal that the "trial court's finding upon conflicting evidence that a clerical error exists and the nature thereof, is conclusive upon this court." (19 Cal.2d at p. 215.) The Supreme Court placed great emphasis on the trial judge's statement that the signed findings did not conform to his true but unexpressed intent, stating that such statement "cannot be wholly disregarded nor lightly brushed aside. It was a declaration of a fact that was concealed in the mind of the judge, and no one was in a better position than he to state his true intent." (19 Cal.2d at p. 214.)

The Bastajian case, in holding that the mere declaration of the trial judge that the final judgment did not properly state his intent is alone sufficient, states an extreme rule. It is difficult to reconcile it in that respect with *Estate of Burnett,* 11 Cal.2d 259 [79 P.2d 89], and *Stevens* v. *Superior Court,* 7 Cal.2d 110 [59 P.2d 988], in both of which the trial judge declared that he had made a clerical error, but this was held not to be conclusive. But in the instant case we are not dependent solely upon the statement of the trial judge that it was his intent not to allow interest. The judge's statement and the testimony of the reporter, reasonably interpreted, are to the effect that the judge not only had such intent, but expressed it at the hearing on March 26, 1953. In addition, there are the positive averments in the affidavit of counsel for respondent to the effect that the judge so ruled on March 26, 1953. Thus, the order of March 27, 1953, did not correctly state what the judge had expressed as his intent. This was a clerical and not a judicial error. Therefore, the court had the power, at any time, to correct it, *nunc pro tunc.*

The order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied February 8, 1957, and appellant's petition for a hearing by the Supreme Court was denied March 5, 1957.