Filed 3/12/21  American Express Centurion Bank v. Silkey CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AMERICAN EXPRESS CENTURION BANK et al., | D077165 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2007-00083022-CU-CL-CTL) |
| ROBERT SILKEY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Niddrie Addams Fuller Singh and David A. Niddrie, for Defendant and Appellant.

Patenaude & Felix and Stephanie J. Boone, for Plaintiffs and Respondents.

Robert Silkey appeals an order denying his motion to vacate the renewal of a money judgment against him under Code of Civil Procedure

section 683.170.[1]  Silkey argues (1) the application for renewal was untimely and (2) trial court erred by approving a nunc pro tunc renewal based on an alleged error by the court clerk.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2008, American Express Centurion Bank and American Express Bank, FSB (collectively, Amex) obtained a judgment against Silkey for approximately $1.5 million.  In July 2018, Amex attempted to file an attorney substitution and an application to renew the judgment, both on Judicial Council forms.  The attorney substitution form included the names and signatures of Amex, its prior attorney, and its new attorney, all consenting to the substitution.  It also included the address, firm, and State Bar information for Amex's new attorney.  It did not, however, include the name of the prior attorney in a different part of the form, where space is provided to list the name of the "[f]ormer legal representative."  The application to renew the judgment was signed by Amex's new attorney.

After an unexplained delay of approximately five months, the trial court clerk rejected Amex's filings.  The clerk wrote, "We are unable to process the attached Substitution of Attorney (Received 7/18/2018) for the reasons indicated below:  [¶]  Each party requesting a substitution of attorney must file their own individual form.  Please correct information above item #1 and item #4.  [¶]  Print the name of the former legal attorney on item #1.  [¶]  Returned via:  [self-addressed stamped envelope]."  (Bold and underlining omitted.)  Item #1 is the space on the form for the name of the "[f]ormer legal representative," and Item #4 is the space for client consent.  (Amex submitted the substitution form on behalf of both Amex entities.)  As

_____

[1]    Subsequent statutory references are to the Code of Civil Procedure.

2

to the renewal of judgment form, the clerk wrote that the "[d]ocumentation submitted is not in agreement with information in the case file" because "[t]he attorney filing is not the attorney on record," i.e., Amex's prior attorney.[2]

Five months after the rejection, in May 2019, Amex filed a second application to renew the judgment. It also filed a signed association of counsel naming its new attorneys. These documents were filed by the court clerk. Two months later, in July 2019, after another unexplained delay, the clerk entered the renewal of judgment.

Silkey moved to vacate the renewal on the ground that Amex's application to renew the judgment was untimely. Amex opposed. It argued that the judgment was actually renewed in 2018, when Amex submitted its first application to the court. Amex contended its filings should not have been rejected by the court clerk. It submitted copies of its rejected filings and the clerk's notices of rejection.

The trial court denied Silkey's motion. It wrote, "[Amex] submitted the application to renew the Judgment on July 18, 2018, before the expiration of the Judgment. Upon receipt of the application, the court clerk was required to 'simply enter() the renewal of judgment in the court records.' [Citation.]

_____

[2] The court clerk appears to have initially filed the substitution form but then decided it was incomplete. The court clerk submitted an application to a superior court judge, apparently ex parte, to correct the record by striking the filing of this form. The judge signed the requested order two days later. Amex has requested that we take judicial notice of other instances where the clerk allegedly erroneously rejected a party's attempt to substitute attorneys. We deny this request because the documents are not relevant to any disputed issues in this appeal. (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063; *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154.)

The court clerk erroneously rejected the renewal application due to an incomplete Substitution of Attorney form, which caused the clerk to perceive that the attorney submitting the application was not the attorney of record. However, all necessary information to enter a Substitution of Attorney was present on the form submitted. This perceived error by the clerk was of no substance to the application itself." Relying on its inherent power to control its own processes and orders, the court ordered that the application for renewal of judgment (and notice of renewal) be deemed filed on July 18, 2018 nunc pro tunc. Silkey appeals.[3]

## DISCUSSION

"Under section 683.010, '[e]xcept as otherwise provided by statute or in the judgment, a judgment is enforceable under this title upon entry.' Section 683.020 provides: 'Except as otherwise provided by statute, upon the expiration of 10 years after the date of entry of a money judgment or a judgment for possession or sale of property: [¶] (a) The judgment may not be enforced.' Section 683.130, subdivision (a) provides in part that a lump-sum money judgment may be extended by renewal of the judgment 'at any time before the expiration of the 10-year period of enforceability.' " (*Iliff v. Dustrud* (2003) 107 Cal.App.4th 1201, 1207, capitalization omitted.)

"The statutory renewal of judgment is an automatic, ministerial act accomplished by the clerk of the court; entry of the renewal of judgment does not constitute a new or separate judgment. 'Filing the renewal

---

[3] Amex questions whether this appeal is proper because "it does not appear a final order has been entered from which to appeal, unless it is the Minute Order of the proceedings." Because the minute order did not direct preparation of a formal order, it is the final, appealable order. (*Jonathan Neil & Associates, Inc. v. Jones* (2006) 138 Cal.App.4th 1481, 1487; *Southwestern Law School v. Benson* (2019) 42 Cal.App.5th Supp. 1, 9.)

4

application . . . results in *automatic* renewal of the judgment.  No court order or new judgment is required.  The court clerk simply enters the renewal of judgment in the court records.' " (*Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 262, fn. omitted.)  " 'Entry by the trial court clerk of a renewal is a ministerial act . . . . ' [Citation.]  '[R]enewal does not create a new judgment or modify the present judgment.  Renewal merely extends the enforceability of the judgment.' " (*Ibid.*)

"The renewal of a judgment . . . may be vacated on any ground that would be a defense to an action on the judgment . . . ." (§ 683.170, subd. (a).)  "The judgment debtor bears the burden of proving, by a preponderance of the evidence, that he or she is entitled to relief under section 683.170. [Citations.]  On appeal, we examine the evidence in a light most favorable to the order under review and the trial court's ruling for an abuse of discretion." (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 199.)

Silkey contends that the trial court erred by denying his motion to vacate and "deeming" the judgment renewed as of the date of Amex's first application to renew the judgment.  He makes numerous interconnected arguments, which we address in turn.

Silkey first asserts that the renewal was based on Amex's second application, the second application was untimely, and therefore the court's order constitutes an improper tolling or extension of the deadline to renew. "The statute providing for renewal of judgments is strictly construed and expressly rejects any extension of time because of tolling or equitable relief." (*Pratali v. Gates* (1992) 4 Cal.App.4th 632, 636 (*Pratali*); accord, Cal. Law Revision Com. com., West's Ann. Code Civ. Proc. (2020 ed.) foll. § 683.020 ["[T]he 10-year period provided by Section 683.020 is not extended because

5

enforcement of the judgment has been stayed or enjoined by court order or by operation of law. Nor is the 10-year period tolled for any reason."].)

Silkey has not shown the trial court engaged in improper tolling or extension of the deadline to renew. The court's order was based on Amex's first application to renew, which was submitted to the court before the deadline. The court found that the clerk should have filed the first application and entered the renewal as of the date of its submission. The court did not, and did not need to, extend or toll the deadline in order to deem the judgment renewed as of that date. The court relied on its inherent equitable power "[t]o amend and control its processes and orders so as to make them conform to law and justice" to enter the renewal nunc pro tunc. (See § 128, subd. (a)(8); *Ames v. Paley* (2001) 89 Cal.App.4th 668, 672 (*Ames*).) This was equitable *relief*, but it was not equitable *tolling*, as Silkey erroneously contends. (Cf. *Prudential-LMI Commercial Insurance v. Superior Court* (1990) 51 Cal.3d 674, 689 [equitable tolling "allow[s] a suit filed after the limitation period expired to proceed"].) And this equitable relief was not prohibited by statute because, as noted, it did not involve an extension of time. (Cf. *Pratali, supra*, 4 Cal.App.4th at p. 636.) Silkey has not shown that the statutes governing judgment renewal displace the inherent equitable powers of the court unrelated to tolling or extension of the renewal deadline. (See *Kinney v. Clark* (2017) 12 Cal.App.5th 724, 740 [describing the constitutional basis for a court's inherent power to control its own processes and orders].)

Alternatively, Silkey argues the trial court erred by finding that the clerk should not have rejected Amex's attorney substitution form and its first application to renew the judgment. He claims Amex's attorney substitution form did not contain the information required by statute and the clerk had a

6

duty to reject it.  We disagree.  As relevant here, the statute governing substitution of attorneys states, "The attorney in an action or special proceeding may be changed at any time before or after judgment of final determination . . . [u]pon the consent of both client and attorney, filed with the clerk, or entered upon the minutes."  (§ 284.)  The form submitted by Amex reflected the consent of the client, its former attorney, and its new attorney.  It contained the information necessary to identify both the former attorney and the new attorney.  The omission of the former attorney's name in another part of the form was immaterial and did not violate the statute. The trial court correctly found the clerk had no basis to reject Amex's attorney substitution form.

The opinion in *Rojas v. Cutsforth* (1998) 67 Cal.App.4th 774 (*Rojas*) is instructive.  In *Rojas*, the plaintiff mailed a complaint to the clerk for filing. (*Id*. at p. 776.)  The clerk rejected the filing because the "declaration of court assignment" was not signed and the summons did not reflect the address of the correct branch of the court.  (*Ibid*.)  After receiving the rejection, the plaintiff resubmitted and successfully filed the complaint.  (*Ibid*.)  By this time, however, the statute of limitations had passed.  (*Ibid*.)  The plaintiff petitioned the trial court for an order requiring the clerk to file the complaint as of the date plaintiff first attempted to file it.  (*Ibid*.)  The trial court denied the petition.  (*Ibid*.)

The appellate court reversed.  (*Rojas*, *supra*, 67 Cal.App.4th at p. 775.) It held that the lack of a signature on the declaration of court assignment did not present any "significant impediment to the fulfillment" of its purpose. (*Id*. at p. 777.)  Similarly, the erroneous address did not justify rejecting the filing.  (*Ibid*.)  *Rojas* explained, "It is difficult enough to practice law without having the clerk's office as an adversary.  Here, paltry nit-picking took the

7

place of common sense and fairness.  [¶]  Where, as here, the defect, if any, is insubstantial, the clerk should file the complaint and notify the attorney or party that the perceived defect should be corrected at the earliest opportunity." (*Ibid*.)  "The functions of the clerk are purely ministerial. [Citation.]  The clerk has no discretion to reject a complaint that substantially conforms to the local rules." (*Ibid*.)  Recognizing that "a paper is deemed filed when it is deposited with the clerk with directions to file the paper," *Rojas* held that the complaint "must be deemed filed" on the date it was first submitted.  (*Id*. at p. 778.)

To support the clerk's action, Silkey repeatedly cites the clerk's statement of rejection.  But the trial court was not required to accept the clerk's determination.  The court reviewed the rejected documents itself. Silkey does not offer any cogent legal argument that the trial court, based on its own review of the documents, could not reasonably find they should have been filed.

Silkey offers various reasons why the documents should not have been considered by the court, but he did not offer any objection at the time.  He has therefore forfeited any claim of error, and he has not presented any persuasive grounds for discretionary relief from that rule.  (See *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725-726; *Bialo v. Western Mutual Insurance Co.* (2002) 95 Cal.App.4th 68, 73; *Studer v. Plough* (1960) 179 Cal.App.2d 436, 442-443.)

Even if we were to consider Silkey's contentions, we would find them unpersuasive.  Silkey first argues the trial court (and presumably this court) was *prohibited* from reviewing the rejected documents because they allegedly conflict with the clerk's description.  He asserts that *People v. Brown* (1961) 198 Cal.App.2d 232, 237, supports the following proposition:  "Where there is

8

a conflict between a party's submission and the official court files, 'the clerk's records should prevail.' " Silkey does not accurately present the holding in *Brown*, which involved a conflict between the criminal sentence recited in a reporter's transcript and the same defendant's sentence in the clerk's transcript. (*Ibid*.) *Brown* held that the clerk's transcript should prevail. (*Ibid*.) *Brown*'s validity on this point appears open to question. (See, e.g., *People v. Sharrett* (2011) 191 Cal.App.4th 859, 864 [reporter's transcript of sentencing hearing prevails over clerk's minutes or abstract].) Even assuming *Brown* remains valid, it does not apply here because the alleged conflict in this case is not between a reporter's transcript and a clerk's transcript. Along similar lines, Silkey relies on *In re Evans* (1945) 70 Cal.App.2d 213. *Evans*, however, recognized that a court must assess the circumstances of each case to determine whether the clerk's minutes should prevail over other evidence: "[W]hether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case." (*Id*. at p. 216.) The trial court properly engaged in such an assessment here. Silkey also faults Amex for not promptly bringing the erroneous filing to the court's attention. He has not shown why this fact precluded the trial court from reviewing the rejected documents in connection with Silkey's motion to vacate.

Citing various authorities, Silkey points out that a public official's actions are generally entitled to a presumption of regularity and reliability. But here, that presumption is rebutted by the rejected documents themselves. Silkey has not shown that the trial court was required to follow the determination of the clerk under this circumstance (whether or not ratified by a different superior court judge). Contrary to Silkey's assertion,

9

there is no "overwhelming" evidence that the clerk acted appropriately in rejecting Amex's filings.  Nor is "the challenged order . . . based on evidence inconsistent with any reasonable interpretation [of the] documents in question."  The trial court's determination that the clerk erred is well-supported and eminently reasonable.  We would reach the same conclusion even on independent review.[4]

Silkey also relies on the California Rules of Court, rule 2.118.  That rule provides, in relevant part, "The clerk of the court must not accept for filing or file any papers that do not comply with the rules in this chapter . . . ."  (*Ibid.*)  Silkey does not explain how Amex's filings failed to comply with the cited chapter, which concerns the "form and format" of papers filed in the trial court.  (*Id.*, rule 2.100(b).)  Silkey references section 284, governing substitution of attorneys, but it is not part of the chapter at issue.  In any event, Silkey has not established a violation of section 284 for reasons we have already discussed.

---

4    Silkey also recites the basic principle that parties may not rely on facts improperly included in the record.  He has not shown that the rejected documents were improperly included in the record.  The documents were filed in the trial court as part of Amex's opposition to Silkey's motion to vacate, they were considered by the court without objection, and they formed the basis for the court's order.  Silkey himself included the documents in his appellant's appendix, i.e., the record.  (See Cal. Rules of Court, rule 8.124(b).)  Silkey's reliance on *In re Estate of Lopus* (1939) 12 Cal.2d 651 is unavailing.  In that case, the Supreme Court found that a probate court's " 'opinion' " was improperly included in the record and should be disregarded.  (*Id.* at p. 653.)  *Lopus* relied on *Estate of Finkler* (1936) 7 Cal.2d 97, 103, which explained, "The opinion of the trial court, while often of great assistance to this court in its appellate duties, is really no part of the record.  The decrees alone speak the orders of trial courts and we are bound to give effect to them as the official pronouncements of their authors."  Assuming this principle remains valid, such an "opinion" is not at issue here.

Finally, Silkey contends the court erred by entering the renewal nunc pro tunc as of the date Amex submitted its first application to renew. The nunc pro tunc procedure is well-established: " 'A court of general jurisdiction has the power, after final judgment, and regardless of lapse of time, to correct clerical errors or misprisions in its records, whether made by the clerk, counsel or the court itself, so that the records will conform to and speak the truth.' " (*Ames, supra,* 89 Cal.App.4th at p. 672.)

Relying on *Wells v. Coca Cola Bottling Co. of Fresno* (1956) 140 Cal.App.2d 218, 221, Silkey claims that a nunc pro tunc judgment "may be entered only if the delay in entering the judgment is not due to any fault of the party making the application." However, the portion of *Wells* cited by Silkey reflects a party's contention, not the court's analysis. The court's analysis rejects such a bright-line rule: "While it was pointed out that a court will always exercise this authority when it is apparent that the delay in entering judgment is that of the court and is not owing to any fault of the party making the application, it is further stated that 'a *nunc pro tunc* order should be granted or refused as justice may require in view of the circumstances of the particular case.' " (*Id.* at p. 222, quoting *Fox v. Hale & Norcross Silver Mining Co.* (1895) 108 Cal. 478, 481.) Silkey also relies on *Michigan Insurance Bank v. Eldred* (1892) 143 U.S. 293. Setting aside whether this federal case has any bearing on California law, it involved a party's untimely attempt to alter or amend its own "bill of exceptions," not an error by the court or clerk. (*Id.* at p. 299.) Silkey has not shown the trial

court here was precluded from entering the renewal nunc pro tunc based on Amex's alleged fault.[5]

Silkey claims the error here was judicial, not clerical, and therefore ineligible for correction nunc pro tunc. "[A] nunc pro tunc order is generally limited to correcting clerical errors; ' "a nunc pro tunc order cannot declare that something was done which was not done." ' " (*People v. Borja* (2002) 95 Cal.App.4th 481, 485.) To support his claim that the error here was judicial, Silkey points out only that the clerk's action was ratified by a different superior court judge, whom Silkey incorrectly identifies as a court commissioner. Since a commissioner is a judicial officer, Silkey asserts that " 'clerical errors' do not include orders made by a commissioner." The law is directly to the contrary: " 'A clerical error is not necessarily one made by the clerk; it may include an error made by the judge or the court.' " (*Gravert v. De Luse* (1970) 6 Cal.App.3d 576, 581.) Silkey cites *Estate of Eckstrom* (1960) 54 Cal.2d 540, 545, but it confirms Silkey's premise is incorrect: "[A] clerical error is no longer to be limited to only those made by a clerk[.]"

The court's discussion in *Rojas, supra*, 67 Cal.App.4th at page 778, explains why the nunc pro tunc procedure is correct. "[A] paper is deemed filed when it is deposited with the clerk with directions to file the paper." (*Ibid.*; accord, *Carlson v. Dept. of Fish & Game* (1998) 68 Cal.App.4th 1268, 1276.) "If a document is presented to the clerk's office for filing in a form that complies with the rules of court, the clerk's office has a ministerial duty to file it. [Citation.] Even if the document contains defects, the clerk's office should

---

5    To the extent Silkey claims the court erred in weighing Amex's alleged fault against other equitable factors in granting relief, he has not shown any abuse of discretion. The trial court could reasonably find that equitable relief was warranted under the circumstances here.

file it and notify the party that the defect should be corrected." (*Voit v. Superior Court* (2011) 201 Cal.App.4th 1285, 1287.) Where, as here, the clerk has "no proper basis for rejecting" a filing, "it must be deemed filed when it was presented" to the clerk. (*Rojas*, at p. 778.) The trial court properly recognized that Amex's application to renew the judgment must be deemed filed as of the date it was first presented, and the renewal was effected as a matter of law. It did not err by entering orders nunc pro tunc to reflect that fact.

## DISPOSITION

The order is affirmed. Amex is entitled to its costs on appeal.


GUERRERO, J.

WE CONCUR:


HALLER, Acting P. J.


DO, J.

13